# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JEFFREY SYDNEY and STEVEN CAPOUSIS, on behalf of themselves and others similarly situated, )<br><br>Plaintiffs, )<br><br>-against- )<br><br>TIME WARNER ENTERTAINMENT-<br>ADVANCE/NEWHOUSE PARTNERSHIP )<br><br>Defendant. ) | No. 5:13-cv-286 (FJS)(TWD) |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LEVINE & BLIT, PLLC
Lewis G. Spicer, Esq. (517858)
Matthew J. Blit, Esq.
Justin S. Clark, Esq
499 South Warren Street, Suite 500B
Syracuse, New York 13202
*Attorneys for Plaintiffs*

April 22, 2015

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................... iv

I.    PRELIMINARY STATEMENT................................................................... 1

II.   STATEMENT OF FACTS............................................................................ 2

      A.    The Parties........................................................................................ 2

      B.    Plaintiffs' Primary Duty Was Installing and Troubleshooting
            TWEAN's Products........................................................................... 3

            1.    Plaintiffs' Performance of Non-Exempt Duties Were More
                  Important than Their Exempt Duties............................................ 3

                  a.    The Installation Was Plaintiffs' Most Important Duty....... 4

                  b.    Maintaining a Positive Relationship with the Property
                        Managers Was More Important than Making Sales........... 4

                  c.    TWEAN Had Other Salesmen Soliciting on
                        Plaintiffs' Territory................................................... 5

                  d.    Plaintiffs Were Extensively Trained on the
                        Performance of Installations and Needed to
                        Know How to Install TWEAN Products as a TSR............. 5

            2.    Plaintiffs Spent the Vast Majority of Their Time Performing
                  Non-Exempt Duties..................................................................... 6

                  a.    Most of Plaintiffs' Time Was Spent Preparing for,
                        Traveling to, and Performing Installations......................... 6

                  b.    Plaintiffs Spent Very Little Time Taking Work
                        Orders from Customers................................................... 7

            3.    Plaintiffs Were Subject to Daily Supervision and Control............. 7

            4.    Plaintiffs' Salary Was Minimal and They Were Denied
                  Overtime.................................................................................... 8

      C.    Plaintiffs Were Not Outside Salesmen................................................ 8

            1.    Work Orders Were Not Obtained at Customer's Residence.......... 8

D.  Plaintiffs Were Retaliated against for Complaining of Unpaid Commissions and Non-Payment of Overtime............................................ 8

III.  ARGUMENT........................................................................................................ 9

A.  Summary Judgment Standard...................................................................... 9

B.  A Genuine Issue of Material Fact Exists as to Whether Plaintiffs Were Exempt from Overtime as Outside Salesmen................................. 10

1.  A Genuine Issue of Material Fact Exists as to the Primary Duty of Plaintiffs' Position of Employment with TWEAN.......... 10

a.  Plaintiffs' Installation and Troubleshooting Duties Were More Important to TWEAN than Plaintiffs' Sales Duties.............................................................................. 11

b.  Plaintiffs Spent Most of Their Time Preparing to Install, Traveling to Installation Locations, Installing, and Troubleshooting......................................................... 13

c.  Plaintiffs Were Subject to Daily Supervision and Control by TWEAN's Supervisors and Managers............ 14

d.  Plaintiffs Received a Low Salary and Displaced Service Technicians Who Were Paid an Hourly Wage and Were Eligible for Overtime Pay.................................................. 15

e.  The Additional Factors Addressed by TWEAN Are Not Compelling......................................................................... 16

f.  The Character of Plaintiffs' Job as a Whole Was that of Laborers, Not Salesmen.................................................... 17

2.  Alternatively, a Genuine Issue of Material Fact Exists as to Whether Plaintiffs Customarily and Regularly Made Sales away from TWEAN's Place of Business....................................... 18

C.  A Genuine Issue of Material Fact Exists as to Whether Plaintiffs Are Exempt from Overtime pursuant to Section 7(i) of the FLSA.................. 19

1.  A Genuine Issue of Material Fact Exists as to Whether TWEAN Is a 'Retail or Service Establishment'............................ 20

a.    Telephone Companies Are Specifically Excluded from Using the 7(i) Exemption for Lacking a Retail Concept....................................................... 20

b.    TWEAN Has Not Presented Evidence that Its Services Are Recognized as a Retail Service in Its Particular Industry.......................................................... 22

D.    A Genuine Issue of Material Fact Exists as to Whether TWEAN Retaliated against Plaintiffs in Violation of the Labor Law...................... 22

E.    A Genuine Issue of Material Fact Exists as to Whether Plaintiffs Were Paid All Commissions Owed.................................................. 25

IV.    CONCLUSION........................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................................... 10

*Esmilla v. The Cosmopolitan Club,*
    936 F. Supp. 2d 229 (S.D.N.Y. 2013)................................................... 24

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,*
    252 F.3d 545 (2d Cir. 2001).................................................................. 23

*Higueros v. New York State Catholic Health Plan, Inc.,*
    526 F. Supp. 2d 342 (E.D.N.Y. 2007)................................................... 23

*Idaho Sheet Metal Works, Inc. v. Wirtz,*
    383 U.S. 190 (1966)............................................................................... 20

*Mullins v. City of New York,*
    653 F.3d 104 (2d Cir. 2011).................................................................. 10

*N.Y. Electric & Gas Corp. v. Sys. Council U-7 of Electrical Workers IBEW,*
    328 F. Supp. 2d 313 (N.D.N.Y. 2004)............................................. 9, 10

*Owopetu v. Nationwide CATV Auditing Services, Inc.,*
    No. 5:10-cv-00018 (D. Vt. Mar. 11, 2011)........................................... 22

*Reed v. A.W. Lawrence & Co.,*
    95 F.3d 1170 (2d Cir. 1996)................................................................... 23

*Schmidt v. Peoples Tel. Union,*
    138 F.2d 13 (8th Cir. 1943)................................................................... 21

*Schwind v. EW & Assocs.,*
    371 F. Supp. 2d 560 (S.D.N.Y. 2005)................................................... 19

<u>Statutes and Regulations</u>

29 U.S.C. 207(i)............................................................................. *passim*

Labor Law § 191(1)(c)................................................................... 24, 25

N.Y. Labor Law § 215(a).................................................................... 23

29 C.F.R. § 541.500(a)........................................................................ 10

29 C.F.R. § 541.500(b)..................................................................................... 17

29 C.F.R. § 541.502.................................................................................. 18, 19

29 C.F.R. § 541.700(a)............................................................................. 11, 16

29 C.F.R. § 541.700(b).................................................................................... 11

29 C.F.R. § 779.312......................................................................................... 19

29 C.F.R. § 779.315......................................................................................... 20

29 C.F.R. § 779.317.................................................................................. 20, 22

29 C.F.R. § 779.320.................................................................................. 20, 22

29 C.F.R. § 779.412......................................................................................... 19

12 N.Y.C.R.R. 142-2.2.................................................................................... 24

# I.    **PRELIMINARY STATEMENT**

Plaintiffs Jeffrey Sydney ("Sydney") and Stephen Capousis ("Capousis") (collectively referred to as "Plaintiffs") hereby respectfully submit their Memorandum of Law in Opposition to Defendant Time Warner Entertainment-Advance/Newhouse Partnership's ("TWEAN" or "Defendant") Motion for Summary Judgment. Plaintiffs, who performed countless hours of uncompensated physical labor as a 'Territory Sales Representative' for TWEAN, have brought causes of action against TWEAN for unpaid overtime in violation of the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("Labor Law"); unpaid commissions in violation of the Labor Law; and retaliation in violation of the FLSA and Labor Law. TWEAN would have the Court believe that Plaintiffs were exempt as outside salesmen simply because Plaintiffs were given a sales title and commissions on the work orders they installed. However, the overall character of the work performed by Plaintiffs demonstrates that Plaintiffs' most important duty was to install the services and assist tenants with service issues after the installation. They were not outside salesmen. At the very least, a genuine issue of material fact exists as to whether Plaintiffs were exempt as outside salesman.

Next, TWEAN would have the Court believe that it is a matter of settled law that it is a 'retail or service establishment' for purposes of the FLSA Section 7(i) exemption; however, TWEAN fails to cite to any controlling authority in support of this position, its case law is inapposite, and it omits any discussion of Federal Regulations that explicitly state that telephone companies lack a retail concept and cannot use the Section 7(i) exemption. Time Warner Cable Inc., the parent corporation of TWEAN, acknowledged in its SEC filings that its primary residential competitor was incumbent local telephone

companies. Further, TWEAN has failed to present any facts that would show that it is recognized in the industry as having a retail concept. Therefore, TWEAN is unable to make use of the Section 7(i) exemption, or, at the least, a genuine issue of material fact exists as to whether Plaintiffs were covered by the Section 7(i) exemption.

Lastly, a genuine issue of material fact exists as to whether TWEAN retaliated against Plaintiffs for their complaints concerning compensation, including commissions and overtime. Sufficient evidence exists in the record to demonstrate that a genuine issue of material fact exists as to whether TWEAN's stated business reasons for the terminations of Plaintiffs were pretextual and that Plaintiffs are still owed commissions.

Accordingly, Plaintiffs respectfully request that this Court deny TWEAN's Motion for Summary Judgment as it relates to Plaintiffs' claims for unpaid overtime wages under the FLSA and Labor Law, and Plaintiffs' claims for commissions and retaliation pursuant to the Labor Law.

## II.   STATEMENT OF FACTS

### A.   The Parties

Plaintiffs were employees of TWEAN who last held the position of Territory Sales Representative ("TSR") in their capacity with TWEAN. Defendant's Statement of Material Fact ("Def. SMF"), ¶¶ 18-19. TWEAN is a subsidiary of Time Warner Cable Inc. Plaintiffs' Counter-Statement of Material Fact ("Pl. SMF"), ¶ 203. TWEAN's principal residential competition for its business was incumbent local telephone companies. Pl. SMF, ¶ 202. Sydney began working as a TSR for TWEAN on December 3, 2010. Def. SMF, ¶ 18. Sydney's employment with TWEAN ended on August 29, 2012. Def. SMF, ¶ 145. Capousis began working as a TSR for TWEAN on December

20, 2010. Def. SMF, ¶ 19. Capousis's employment with TWEAN ended on April 9,

2013. Def. SMF, ¶ 158.

As a TSR, Sydney worked between 50 and 70 hours per week on average. Def.

SMF, ¶ 61. As a TSR, Capousis worked between 55 and 70 hours per week on average.

Def. SMF, ¶ 64. Plaintiffs were paid a base salary of $300.00 per week. Def. SMF, ¶ 96.

As TSRs, Plaintiffs were not paid overtime wages for their hours worked in excess of

forty in a work week. Pl. SMF, ¶ 204. TWEAN knew that Plaintiffs were working

overtime hours for which they were not being compensated with overtime wages. Pl.

SMF, ¶ 205.

### B. Plaintiffs' Primary Duty Was Installing and Troubleshooting TWEAN's Products

#### 1. Plaintiffs' Performance of Non-Exempt Duties Were More Important than Their Exempt Duties

Plaintiffs' duties as a TSR were to: take work orders from potential customers of

TWEAN who called in; perform the installation; troubleshoot technical or mechanical

issues for existing customers; and maintain a positive relationship with leasing agents and

management of the apartment complexes they were assigned. Pl. SMF, ¶ 21. On a

typical day, Plaintiffs would arrive at work and perform the following work: check emails

and voicemails, tend to paperwork and work orders, attend meetings and/or check in with

their supervisor, go to the warehouse to collect equipment necessary for the day's

installations, travel to installation locations, perform installations, and check in with

leasing agents or management of their assigned apartment complexes to see if any

problems arose. Pl. SMF, ¶ 184. The TSR position was much more labor intensive than

the job of a Direct Sales Representative ("DSR"), because the position of TSR required

TWEAN employees to use and be trained on the use of tools and equipment. Pl. SMF, ¶¶ 172-174, 187-88. Plaintiffs did not directly contact potential customers of TWEAN to obtain work orders; instead, potential customers of TWEAN would contact Plaintiffs to place a work order. Pl. SMF, ¶¶ 169-70. Plaintiffs were not required to make door to door sales and did not do so. Pl. SMF, ¶ 171. Plaintiffs did not promote ancillary growth of TWEAN products nor did they have any control or input on product prices or promotions. Pl. SMF, ¶ 190.

### a. The Installation Was Plaintiffs' Most Important Duty

TWEAN did not have an enforceable service agreement with the customer until the installation occurred. Pl. SMF, ¶ 208. Also, Plaintiffs would not receive units credited toward their monthly quota until the installation was completed. Pl. SMF, ¶ 183. If another TSR or technician performed the installation in Plaintiffs' territory, Plaintiffs would not receive units credited toward their monthly quota. Pl. SMF, ¶ 183. Even when customers requested self-installation kits, TSRs often performed the installation at the customer's request. Pl. SMF, ¶ 182. The ability to safely and effectively install TWEAN products was vital to becoming a TSR. Pl. SMF, ¶¶ 172-73, 211-12. If an employee of TWEAN could not learn how to safely and properly install TWEAN products, that employee could not be a TSR. Pl. SMF, ¶ 215.

### b. Maintaining a Positive Relationship with the Property Managers Was More Important than Making Sales

Secondary to installation was maintaining a positive relationship with the leasing agents and property managers of the apartment complexes that Plaintiffs were assigned. Pl. SMF, ¶¶ 175-77. Plaintiffs were the point of contact for all customers, leasing agents, and property managers of the apartment complexes they were assigned and they would

contact Plaintiffs if there were technical difficulties or mechanical issues to be addressed.
Pl. SMF, ¶¶ 179-80.  However, Plaintiffs dealt almost exclusively with the leasing agents
and property management of the apartment complexes they were assigned.  Pl. SMF, ¶
176.  One significant way that Plaintiffs maintained a positive relationship with property
managers was by troubleshooting tenants' issues with their TWEAN services.  Pl. SMF, ¶
179.  Plaintiffs did not receive any extra compensation for troubleshooting or making
repairs.  Pl. SMF, ¶ 179. Another significant way Plaintiffs maintained a positive
relationship with property managers was to obey the apartment complexes' rules on non-
solicitation.  Pl. SMF, ¶ 178.  TSRs were expected to fix technical and mechanical
problems with the junction box at the apartment complexes assigned to them.  Pl. SMF, ¶
181.  Without a positive relationship with the leasing agents or property managers,
Plaintiffs were less likely to obtain work orders from their assigned apartment complexes.
Def. SMF, ¶ 36; Pl. SMF, ¶ 177.

> **c.**  **TWEAN Had Other Salesmen Soliciting on Plaintiffs'
> Territory**

DSRs were door-to-door salesmen for TWEAN who solicited in the same
apartment complexes that were assigned to Plaintiffs.  Pl. SMF, ¶ 201.   As such, it is
reasonable to infer that making sales was not Plaintiffs' most important duty because
TWEAN had other employees responsible for making sales in the same apartment
complexes assigned to Plaintiffs.

> **d.**  **Plaintiffs Were Extensively Trained on the Performance
> of Installations and Needed to Know How to Install
> TWEAN Products as a TSR**

Plaintiffs received a week of safety, equipment, and installation training as part of
becoming a TSR.  Pl. SMF, ¶ 172.  Plaintiffs received training on to the proper use of

more than twenty different tools and how to safely install TWEAN products. Pl. SMF, ¶ 172. Being able to safely and effectively install TWEAN products was vital to becoming a TSR. Pl. SMF, ¶ 211. The individual who trained Capousis expressed concern that he could not be a TSR because he had difficulty with the installation training. Pl. SMF, ¶ 212. Sydney also spent several days shadowing TSRs in other territories. Pl. SMF, ¶ 173. Plaintiffs were trained by a TWEAN technical trainer. Pl. SMF, ¶ 172.

### 2. Plaintiffs Spent the Vast Majority of Their Time Performing Non-Exempt Duties

#### a. Most of Plaintiffs' Time Was Spent Preparing for, Traveling to, and Performing Installations

The actual installation of TWEAN products itself usually took between 30 minutes and an hour to complete, but, many times, it took much longer if technical difficulties emerged. Pl. SMF, ¶¶ 185-186. In order to perform an installation, Plaintiffs would gather the necessary equipment from the warehouse, drive to the potential customer's residence, contact the potential customer, locate the junction box, adjust the filters in the junction box according to the services requested, connect the line, connect all the televisions, modems, and telephones, ensure that the services were working, and resolve any routine wiring issues. Pl. SMF, ¶¶ 184, 187. Plaintiffs typically performed between 5 and 10 installations per day. Pl. SMF, ¶ 209.

TWEAN's offices where Plaintiffs worked were located at 6005 Fair Lakes Boulevard, East Syracuse, New York. Pl. SMF, ¶ 196. TWEAN maintained a warehouse nearby that stored telephone, internet, and cable equipment and other items needed for installations, where Plaintiffs would go before traveling to installation locations. Pl. SMF, ¶ 197. Plaintiffs were assigned to various apartment complexes

throughout Onondaga County that required a significant amount of travel time to reach.

Pl. SMF, ¶ 198.  Sydney performed installations throughout Onondaga County, but

primarily in the City of Syracuse, Liverpool, and Baldwinsville.  Pl. SMF, ¶ 213.

Capousis performed installations throughout Onondaga County and Cortland County, but

frequently made trips as far south as Tully, north as Brewerton, and as far east as Manlius

and Bridgeport.  Pl. SMF, ¶ 214.

> **b.   Plaintiffs Spent Very Little Time Taking Work Orders from Customers**

Plaintiffs did not directly contact potential customers of TWEAN to obtain work

orders; instead, potential customers of TWEAN would contact Plaintiffs by telephone to

place a work order.  Pl. SMF, ¶¶ 169-70.  Plaintiffs did not obtain work orders by going

door to door to solicit new customers and were not required to make door to door sales.

Pl. SMF, ¶¶ 171, 207.  It took only about 5 to 10 minutes for Plaintiffs to obtain the

information needed for the work order.  Pl. SMF, ¶ 210.

> **3.   Plaintiffs Were Subject to Daily Supervision and Control**

As TSRs, Plaintiffs were assigned to various supervisors or managers at different

times.  Pl. SMF, ¶ 199.  Plaintiffs' supervisors or managers were Stephen Holzhauer,

Hang Zhu, William Edwards and/or Matt LeClair at one time or another.  Pl. SMF, ¶ 199.

Plaintiffs were required by their supervisors and mangers to work Monday through

Saturday.  Pl. SMF, ¶ 193.  Plaintiffs' supervisors and managers required Plaintiffs to go

to TWEAN's offices each work day, except some Saturdays, and were required to attend

weekly meetings with their supervisors.  Pl. SMF, ¶ 194.  Plaintiffs were required to

report daily to their supervisors, and keep their supervisors apprised of their location and

the work Plaintiffs were performing.  Pl. SMF, ¶ 191.  If Plaintiffs missed a scheduled

installation, their supervisors would contact them and seek an explanation as to why the installation was not performed.  Pl. SMF, ¶ 192.  TSRs had no authority to offer prices, promotions, or packages other than what was authorized by TWEAN.  Pl. SMF, ¶ 190.

### 4. Plaintiffs' Salary Was Minimal and They Were Denied Overtime

Plaintiffs' base salary was $300.00 per week or $7.50 per hour for a 40 hour work week.  Def. SMF, ¶ 96.  Plaintiffs were not paid overtime.  Pl. SMF, ¶ 204.  Service technicians employed by TWEAN were paid overtime and were hourly employees.  Pl. SMF, ¶ 195.  If a TSR performed the installation, TWEAN waived the ordinary installation fee it would charge if a service technician performed the installation.  Pl. SMF, ¶ 189.  As such, it is reasonable to infer that TWEAN saved money by lessening its payroll obligations by having TSRs perform installations instead of service technicians.

### C. Plaintiffs Were Not Outside Salesmen

#### 1. Work Orders Were Not Obtained at Customer's Residence

Plaintiffs did not directly solicit potential customers for TWEAN.  Pl. SMF, ¶ 169.  Instead, potential customers of TWEAN would call Plaintiffs to place a work order.  Pl. SMF, ¶ 170.  Most of the work orders that Plaintiffs obtained were while they were in TWEAN's office space or while traveling to perform installations at other locations.  Pl. SMF, ¶ 206.  Plaintiffs never obtained work orders by going door to door to solicit new customers and were not required to make door to door sales.  Pl. SMF, ¶¶ 171, 207.

### D. Plaintiffs Were Retaliated against for Complaining of Unpaid Commissions and Non-Payment of Overtime

While employed by TWEAN, Plaintiffs made several complaints to representatives of TWEAN about unpaid commissions and non-payment of overtime.  Pl.

SMF, ¶ 200.  Sydney made frequent complaints about his pay, including unpaid commissions, throughout 2012 and into August 2012, just before he was terminated.  Pl. SMF, ¶ 216.  Shortly before he was terminated, Capousis made frequent complaints about his unpaid commissions, including in February and March 2013, to Matt LeClair and Jamie Stewart.  Pl. SMF, ¶ 217.  Plaintiffs were not paid the commissions that they had earned pursuant to TWEAN's commissions plan in place.  Pl. SMF, ¶¶ 111, 116, 133. Plaintiffs made use of TWEAN's commissions dispute procedure.  Def. SMF, ¶¶ 124, 127.  TWEAN still owes Plantiffs commissions earned as a TSR.  Pl. SMF, ¶ 133.

After engaging in a protected activity, Sydney was terminated by TWEAN.  Def. SMF, ¶ 145.  TWEAN allegedly terminated Sydney because of violations of its cash handling policy; however, Sydney had committed the same alleged violations previously, and which was known to TWEAN, without discipline.  Pl. SMF, ¶¶ 137-38.

After engaging in a protected activity, Capousis was terminated by TWEAN. Def. SMF, ¶ 158.  TWEAN allegedly terminated Capousis due to alleged violations of its policy on handling customer information; however, other TSRs also wrote down customer's social security numbers in notebooks and were not disciplined or terminated. Pl. SMF, ¶¶ 147-49, 157, 159.

## III.  **ARGUMENT**

### A.  **Summary Judgment Standard**

"A court should grant a motion for summary judgment only if 'there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law.'"  *N.Y. Electric & Gas Corp. v. Sys. Council U-7 of Electrical Workers IBEW*, 328 F. Supp. 2d 313, 315 (N.D.N.Y. 2004) (quoting

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991)).  Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party." *N.Y. Electric & Gas Corp.*, 328 F. Supp. 2d at 315.  In the instant action, Plaintiffs are the non-moving party.

### B.   A Genuine Issue of Material Fact Exists as to Whether Plaintiffs Were Exempt from Overtime as Outside Salesmen

"Subject to certain exceptions, the FLSA mandates overtime pay for employees who work more than 40 hours per week." *Mullins v. City of New York*, 653 F.3d 104, 106 (2d Cir. 2011).  "The employer who invokes the exemption bears the burden of establishing that the employee falls within the exemption." *Id.* at 113.  "The term 'employee employed in the capacity of outside salesman'...shall mean any employee: (1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."  29 C.F.R. § 541.500(a).

### 1.   A Genuine Issue of Material Fact Exists as to the Primary Duty of Plaintiffs' Position of Employment with TWEAN

"To qualify for exemption under this part, an employee's 'primary duty' must be the performance of exempt work. The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an

employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

"Factors to consider when determining the primary duty of an employee include, but are not limited to, [a] the relative importance of the exempt duties as compared with other types of duties; [b] the amount of time spent performing exempt work; [c] the employee's relative freedom from direct supervision; and [d] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). As noted in TWEAN's Memorandum in Support of Summary Judgment, the Labor Law is defined and applied in the same manner as the FLSA as it relates to exemptions. Def. Mem., p. 10-11.

In the instant civil action, Plaintiffs' primary duty as a TSR was to perform the installation of TWEAN's products, which is discussed further below.

### a.     Plaintiffs' Installation and Troubleshooting Duties Were More Important to TWEAN than Plaintiffs' Sales Duties

If an employee of TWEAN could not learn how to safely and properly install TWEAN products, that employee could not be a TSR. Pl. SMF, ¶ 215. Plaintiffs received a week of safety, equipment, and installation training as part of becoming a TSR. Pl. SMF, ¶ 172. Plaintiffs were trained like service technicians, were trained by a service technician, and replaced the duties normally provided by service technicians to TWEAN customers. Pl. SMF, ¶¶ 172, 189. TWEAN did not have an enforceable service

agreement with the customer until the installation occurred.  Pl. SMF, ¶ 208.  Also,

Plaintiffs would not receive units credited toward their monthly quota until the

installation was completed.  Pl. SMF, ¶ 183.  If another TSR or technician performed the

installation in Plaintiffs' territory, Plaintiffs would not receive units credited toward their

monthly quota.  Pl. SMF, ¶ 183.

Secondary to installation was maintaining a positive relationship with the leasing

agents and property managers of the apartment complexes that Plaintiffs were assigned.

Pl. SMF, ¶¶ 175-77.  One significant way that Plaintiffs maintained a positive

relationship with property managers was by troubleshooting the tenant's issues with their

TWEAN services.  Pl. SMF, ¶ 179.  Plaintiffs did not receive any extra compensation for

troubleshooting or repair work. Pl. SMF, ¶ 179.  DSRs were door-to-door salesmen for

TWEAN who solicited in the same apartment complexes that were assigned to Plaintiffs.

Pl. SMF, ¶ 201.   As such, it is reasonable to infer that making sales was not Plaintiffs'

most important duty because TWEAN had other employees responsible for making sales

in the same apartment complexes assigned to Plaintiffs.

TWEAN argues in its Memorandum of Law in Support of Summary Judgment

that making sales and obtaining orders were Plaintiffs' most important duty because: (1)

the TSR job description stated the purpose of the job was to sell TWEAN services, (2)

the TSR position was advertised as a sales job, (3) Plaintiffs were hired based on their

previous sales experience, (4) Plaintiffs received sales training, (5) Plaintiffs attended

sales meetings, (6) Plaintiffs were ranked on their sales, (7) performance expectations

were sales based, and (8) Plaintiffs were part of a commissions plan. Def. Mem., p. 12.

In regard to TWEAN's first and second points, the stated purpose of the job and actual

duties are two different matters. Pl. SMF, ¶ 21. Actual duties are controlling in a primary duty analysis. As to TWEAN's third point, this fact is in dispute because a third TSR hired around the same time had technical experience, but no sales experience. Pl. SMF, ¶¶ 16, 20. As to TWEAN's fourth, fifth, and sixth points, this fact is in dispute because the sales training and sales meeting were merely motivational events and a time to compare DSR sales to other DSRs and TSR installations to other TSRs. Pl. SMF, ¶¶ 75-76. As to TWEAN's seventh point, this fact is in dispute because TSRs were evaluated on more factors than whether their installation quota was met or not. Pl. SMF, ¶ 81. As to TWEAN's eighth point and final point, Plaintiffs' commissions plan has no bearing on the actual duties performed by Plaintiffs as TSRs. In sum, TWEAN's argument focuses on what TWEAN considered TSRs to be, not what TSRs were in actuality. Ultimately, if Plaintiffs were unable to safely and properly install TWEAN products, Plaintiffs could not work as a TSR, which demonstrates that installation and troubleshooting duties were more important to TWEAN that any limited sales duties Plaintiffs may have had.

        **b.**      **Plaintiffs Spent Most of Their Time Preparing to Install, Traveling to Installation Locations, Installing, and Troubleshooting**

      Plaintiffs' typical day consisted mostly of physical labor related to the installation and troubleshooting of TWEAN products. Pl. SMF, ¶¶ 184, 187. The actual installation of TWEAN products itself usually took between 30 minutes and an hour to complete, but, many times, it took much longer if technical difficulties emerged. Pl. SMF, ¶¶ 185-186. Plaintiffs typically performed between 5 and 10 installations per day. Pl. SMF, ¶ 209. In addition, Plaintiffs were the point of contact for all customers, leasing agents, and

property managers of the apartment complexes they were assigned and they would

contact Plaintiffs if there were technical difficulties or mechanical issues to be addressed.

Pl. SMF, ¶¶ 179-80.  Moreover, Plaintiffs were assigned to various apartment complexes

throughout Onondaga County that required a significant amount of travel time to reach.

Pl. SMF, ¶¶ 198, 213-14.  In contrast, Plaintiffs' time taking work orders from customers

and dropping off promotional information with leasing agents and property managers was

minimal.  Pl. SMF, ¶¶ 209-10; Def. SMF, ¶¶ 31-34.  Plaintiffs did not directly contact

potential customers of TWEAN to obtain work orders; instead, potential customers of

TWEAN would contact Plaintiffs by telephone to place a work order.  Pl. SMF, ¶¶ 169-

70.  It took only about 5 to 10 minutes for Plaintiffs to obtain the information needed for

each work order.  Pl. SMF, ¶ 210.  As such, an analysis of this factor favors a finding that

most of Plaintiffs' time working was spent on non-exempt work.

<strong>c.   Plaintiffs Were Subject to Daily Supervision and<br/>Control by TWEAN's Supervisors and Managers</strong>

As TSRs, Plaintiffs were assigned to various supervisors or managers at different

times.  Pl. SMF, ¶ 199.  Plaintiffs were required by their supervisors and mangers to work

Monday through Saturday.  Pl. SMF, ¶ 193.  Plaintiffs' supervisors and managers

required Plaintiffs to go to TWEAN's offices each work day, except some Saturdays, and

were required to attend weekly meetings with their supervisors.  Pl. SMF, ¶ 194.

Plaintiffs were required to report daily to their supervisors, and keep their supervisors

apprised of their location and the work Plaintiffs were performing.  Pl. SMF, ¶ 191.  If

Plaintiffs missed a scheduled installation, their supervisors would contact them and seek

an explanation as to why the installation was not performed.  Pl. SMF, ¶ 192.  TWEAN

argues that Plaintiffs were unsupervised because their supervisors never or rarely went

into the field with Plaintiffs.  Def. Mem., p. 15.  However, this lone fact is outweighed by the exercise of control exhibited by Plaintiffs' supervisors and managers when they mandated the number of days worked per week, the times Plaintiffs had to report to TWEAN's offices, the daily, if not hourly, reporting, and the performance of certain installations.  Moreover, TWEAN's assertion is a premise that belongs in the past when cellular phones and the ability to receive email remotely did not exist.  As such, this factor favors a finding that Plaintiffs lacked the relative freedom from direct supervision indicative of an outside salesman.

> **d.    Plaintiffs Received a Low Salary and Displaced Service Technicians Who Were Paid an Hourly Wage and Were Eligible for Overtime Pay**

Plaintiffs' base salary was $300.00 per week or $7.50 per hour for a 40 hour work week.  Def. SMF, ¶ 96.  Plaintiffs were not paid overtime.  Pl. SMF, ¶ 204.  Service technicians employed by TWEAN were paid overtime and were hourly employees.  Pl. SMF, ¶ 195.  Plaintiffs were trained like service technicians, were trained by a service technician, and replaced the duties normally provided by service technicians to TWEAN customers.  Pl. SMF, ¶¶ 172, 189.  In effect, Plaintiffs lessened TWEAN's need for service technicians and it is reasonable to infer that TWEAN saved money by lessening its payroll obligations by having TSRs perform installations instead of service technicians.  This inference is supported by the fact that if a TSR performed the installation, the ordinary installation fee was waived.  Pl. SMF, ¶ 189.

TWEAN argues in its Memorandum of Law in Support of Summary Judgment that Plaintiffs earned commissions as part of their compensation.  Def. Mem., p. 14.  While this is true, this factor clearly evaluates salary against wages, not total

compensation against wages. *See* 29 C.F.R. § 541.700(a). It is undisputed that Plaintiffs'

base salary was $300.00 per week. Def. SMF, ¶ 96; Pl. SMF, ¶ 96. Plaintiffs' base

salary was necessarily less than the hourly and overtime wages that service technicians

would have been paid for performing the non-exempt work in place of Plaintiffs because

Plaintiffs were subject to a cap on salary, while service technicians were required to be

paid for each hour worked and at the overtime premium for all hours in excess of 40 in a

work week. As such, this factor favors a finding that Plaintiffs' primary duty was the

performance of installations and other technical services.

        **e.**     **The Additional Factors Addressed by TWEAN Are Not Compelling**

     In further support of its position, TWEAN argues that sales were Plaintiffs'

primary duty because Plaintiffs independently solicited new business. Def. Mem., p. 15-

16. This argument is not compelling because Plaintiffs were involved in minimal

'solicitation' efforts. The extent of Plaintiffs 'solicitation' efforts were to make initial

contact with the leasing agent or property manager of the apartment complex and provide

the leasing agent or property manager with promotional information from TWEAN. Def.

SMF, ¶¶ 31-34. After that, it was up to the leasing agent or property manager to

cooperate and the potential customer to contact Plaintiffs to place a work order. Def.

SMF, ¶ 36; Pl. SMF, ¶¶ 169-71, 177, 206-07.

     TWEAN also argues that sales were Plaintiffs' primary duty because Plaintiffs'

work was unsuitable for an hourly wage. Def. Mem., p. 15-16. This argument is also not

compelling due to the amount of direct control and supervision exercised over Plaintiffs

by their supervisors and managers as discussed above, including the submission of daily

reports detailing by the hour the work being performed. Pl. SMF, ¶¶ 191-94; Exhibit K

to the Declaration of Lewis G. Spicer.  With these daily reports, TWEAN could have

easily determined the number of hours worked in a given week and whether they were

compensable.  Therefore, the additional factors addressed by TWEAN in its

Memorandum of Law in Support of Summary Judgment do not favor a finding that

Plaintiffs' primary duty was sales, and, in fact, support the opposite finding.

        **f.**      **The Character of Plaintiffs' Job as a Whole Was that of Laborers, Not Salesmen**

Plaintiffs typical day consisted mostly of physical labor related to the installation

and troubleshooting of TWEAN products.  Pl. SMF, ¶ 184.  To the extent that Plaintiffs

took work orders from customers and dropped off promotional information with leasing

agents and property managers, it was but a minor portion of their duties and work

actually performed.  Pl. SMF, ¶¶ 209-10; Def. SMF, ¶¶ 31-34.  TWEAN argues that

preparing to install, traveling to install, performing the installation, and troubleshooting

technical difficulties were incidental and in conjunction with sales.  Def. Mem., p. 5-6.

Indeed, "in determining the primary duty of an outside sales employee, work performed

incidental to and in conjunction with the employee's own outside sales or solicitations,

including incidental deliveries and collections, shall be regarded as exempt outside sales

work." 29 C.F.R. § 541.500(b).  However, Plaintiffs' work relating to installations of

products required more physical labor than simply delivering or collecting.  Pl. SMF, ¶¶

172-174, 187-88.

Plaintiffs were trained like service technicians, were trained by a service

technician, and replaced the duties normally provided by service technicians to TWEAN

customers.  Pl. SMF, ¶¶ 172, 189.  If Plaintiffs missed a scheduled installation, TWEAN

would not send a service technician in their place; instead, Plaintiffs' supervisors would

inquire with Plaintiffs about when Plaintiffs would be performing the installation. Pl. SMF, ¶ 192. Lastly, and perhaps most importantly, if Plaintiffs proved incapable of safely and effectively installing TWEAN products, they could not work as a TSR. Pl. SMF, ¶ 215. If a salesman does not have a driver's license, that fact would not render him ineligible from performing sales duties. This analogy only further illustrates that the character of Plaintiffs' job as a TSR, as a whole, was to perform physical labor related to the installation of TWEAN products, not the sale of TWEAN products. Therefore, the Court should deny TWEAN's motion for summary judgment.

> ### 2. Alternatively, a Genuine Issue of Material Fact Exists as to Whether Plaintiffs Customarily and Regularly Made Sales away from TWEAN's Place of Business

"An outside sales employee must be customarily and regularly engaged 'away from the employer's place or places of business.' The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502.

In the instant civil action, Plaintiffs obtained work orders by telephone either while at TWEAN's offices or while traveling to perform unrelated installations, not at the customer's residence. Pl. SMF, ¶¶ 169-71, 206-07. Plaintiffs did not directly solicit potential customers for TWEAN. Pl. SMF, ¶ 169. Instead, potential customers of

TWEAN would call Plaintiffs to place a work order. Pl. SMF, ¶ 170. Plaintiffs did not

obtain work orders by going door to door to solicit new customers and were not required

to make door to door sales. Pl. SMF, ¶¶ 171, 207. In fact, it was the DSRs' job to

actively solicit orders at customers' residences, not the TSRs' job. Pl. SMF, ¶ 201.

Rather, most of the work orders that Plaintiffs obtained were while they were in

TWEAN's office space or while traveling to perform installations at other locations. Pl.

SMF, ¶¶ 184, 206. Since Plaintiffs were not obtaining work orders at the customer's

residence and often obtained work orders from TWEAN's offices, a genuine issue of

material fact exists as to whether Plaintiffs customarily and regularly made sales away

from TWEAN's place of business. *See* 29 C.F.R. § 541.502. Therefore, the Court should

deny TWEAN's motion for summary judgment.

### C. A Genuine Issue of Material Fact Exists as to Whether Plaintiffs Are Exempt from Overtime pursuant to Section 7(i) of the FLSA

For the Section 7(i) exemption to apply, "an employer must demonstrate that: (1)

the employee was employed by a retail or service establishment; (2) the employee's

regular rate of pay exceeded one and one-half times the minimum hourly rate; and (3)

more than half of the employee's compensation for a representative period (not less than

one month) represented commissions on goods or services." *Schwind v. EW & Assocs.*,

371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005) (citing 29 U.S.C. § 207(i) and 29 C.F.R. §

779.412). "A 'retail or service establishment' shall mean an establishment 75 per centum

of whose annual dollar volume of sales of goods or services (or of both) is not for resale

and is recognized as retail sales or services in the particular industry. 29 C.F.R. §

779.312. "Thus, the term 'retail or service establishment' as used in the Act denotes the

traditional local retail or service establishment whether pertaining to the coverage or exemption provisions." 29 C.F.R. § 779.315.

In the instant civil action, TWEAN is a type of establishment that is excluded from utilizing the Section 7(i) exemption and has failed to submit evidence proving that it is recognized as a retail service in its particular industry, as further discussed below.

1.  **A Genuine Issue of Material Fact Exists as to Whether TWEAN Is a 'Retail or Service Establishment'**

   a.  **Telephone Companies Are Specifically Excluded from Using the 7(i) Exemption for Lacking a Retail Concept**

29 C.F.R. § 779.317 provides a partial list of establishments that lack a retail concept; one of those establishments expressly identified is telephone companies. Among other establishments, C.F.R. § 779.317 also identifies air conditioning and heating systems contactors, ambulance service companies, banks, broadcasting companies, common carrier stations and terminals, electric and gas utilities, magazine subscription agencies, newspaper and magazine publishers, radio and television broadcasting stations and studios, real estate companies, security dealers, and telegraph and cable companies as lacking a retail concept. On the other hand, 29 C.F.R. § 779.320 identifies a partial list of establishments that may be recognized as retail, such as: automobile repair shops, barber shops, department stores, grocery stores, and hardware stores, among other similar traditionally local establishments. "The legislative recital of telephone, gas and electric, and credit companies along with a number of others as businesses outside the exemption demonstrates that not everything the consumer purchases can be a retail sale of goods or services...." *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 203 (1966) (internal citations omitted).

In TWEAN's Memorandum of Law in Support of Summary Judgment, TWEAN argues that it is a cable service company and, citing to several unpublished opinions, posits that "every court that has considered the § 7(i) Exemption in the context of the cable industry has held that cable services companies satisfy the 'retail establishment' requirement." Def. Mem., p. 17-18.  TWEAN is not a cable services company; instead, it is more accurately identified as a telephone company.  TWEAN is a subsidiary of Time Warner Cable Inc.  Pl. SMF, ¶ 203.  In Time Warner Cable Inc.'s Form 10-K filed on February 17, 2012, it states that "TWC [Time Warner Cable Inc.] competes with incumbent local telephone companies, including AT&T and Verizon, across each of its primary residential services." Exhibit Y (p. 8) to the Declaration of Lewis G. Spicer; Pl. SMF, ¶ 202.  These primary residential services are cable television, internet, and telephone services.  Def. SMF, ¶ 1.  TWEAN attempts to escape the express exclusion of telephone companies from Section 7(i) by claiming to be a cable services company, but its own words betray it.

Furthermore, even if the Court considered TWEAN to be a cable services company, which it is not, cable services companies are more similar to telephone companies, gas and electric companies, and telegraph and cable companies, which are excluded from utilizing the Section 7(i) exemption for lacking a retail concept, than TWEAN is similar to traditionally local establishments such as department stores, grocery stores, and hardware stores, which may be recognized as retail. *See Schmidt v. Peoples Tel. Union*, 138 F.2d 13, 15 (8th Cir. 1943) ("We do not think that Congress used the term 'service establishment' in its broad sense, which would include public service utilities such as railroads, gas and electric companies, telephone and telegraph

companies, and the like."); *compare* 29 C.F.R. § 779.317 *with* 29 C.F.R. § 779.320.

Therefore, TWEAN is excluded from utilizing the Section 7(i) exemption as an

affirmative defense in this action.

> **b.    TWEAN Has Not Presented Evidence that Its Services Are Recognized as a Retail Service in Its Particular Industry**

TWEAN has presented no evidence in support of its motion for summary

judgment that it is recognized as a retail service in its particular industry.  Instead,

TWEAN attempts to rely upon unpublished opinions to establish a material fact.  Def.

Mem., p. 17-18.  However, in *Owopetu v. Nationwide CATV Auditing Services, Inc.*, No.

5:10-cv-00018 (D. Vt. Mar. 11, 2011) ("Owopetu I")[1], the court expressly denied

summary judgment to the defendant for failing to offer evidence regarding how

individuals in the industry and with knowledge of the industry view the defendant's

business.  Exhibit EE (p.14-15) to the Declaration of Lewis G. Spicer.  Therefore, at a

minimum, a genuine issue of material fact exists concerning whether TWEAN is

recognized in the industry as a retail service.  Notwithstanding this position, Plaintiffs

posit that TWEAN is excluded from utilizing the Section 7(i) exemption, as argued

above.  Thus, the Court should deny TWEAN's motion for summary judgment.

> **D.    A Genuine Issue of Material Fact Exists as to Whether TWEAN Retaliated against Plaintiffs in Violation of the Labor Law**

"No employer or his or her agent...shall discharge, threaten, penalize, or in any

other manner discriminate or retaliate against any employee (i) because such employee

has made a complaint to his or her employer...that the employer has engaged in conduct

---

[1] TWEAN cites to *Owopetu v. Nationwide CATV Auditing*, No. 5:10-cv-18, 2011 WL 4433159, (D. Vt. Sept. 21, 2011), the second motion for summary judgment by the defendant, in its Memorandum of Law in Support of Summary Judgment and refers to the case as "Owopetu II".  Def. Mem., p. 18.

that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner...." N.Y. Labor Law § 215(a). In order to survive a motion for summary judgment, a plaintiff must raise a genuine issue of material fact showing that "he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result" and there was "a nexus between the employee's complaint and the employer's retaliatory action." *See Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 346-47 (E.D.N.Y. 2007) (applying the motion to dismiss standard but identifying the elements of the claim). "In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).

TWEAN first argues that Plaintiffs cannot point to facts that tend to establish a prima facie case for retaliation under Labor Law § 215 because (1) Plaintiffs' complaints were not of a colorable violation of the Labor Law and (2) there was no casual connection between the complaints and the terminations. Def. Mem., p. 23-24. This is plainly incorrect. As for TWEAN's first argument, while employed by TWEAN, Plaintiffs made several complaints to representatives of TWEAN about unpaid commissions and non-payment of overtime. Pl. SMF, ¶ 200. Plaintiffs were not paid the commissions that they had earned pursuant to TWEAN's commissions plan in place. Pl. SMF, ¶¶ 111, 116, 133. Indisputably, Plaintiffs made use of TWEAN's commissions

dispute procedure.  Def. SMF, ¶¶ 124, 127; Pl. SMF, ¶¶ 124, 127.  Failure to pay commissions and overtime are violations of the Labor Law.  Labor Law § 191(1)(c); 12 N.Y.C.R.R. 142-2.2.  Both Plaintiffs were terminated shortly after making complaints that they were not being paid the commissions they were owed, and after making numerous prior complaints in a similar regard.  Pl. SMF, ¶¶ 216-17.  Therefore, the temporal proximity of the complaints and adverse employment actions raises a genuine issue of material fact concerning the causal nexus requirement.

"Once the plaintiff establishes a prima facie case of retaliation under Section 215, the burden shifts to the defendant to produce evidence suggesting that it had a legitimate, non-retaliatory explanation for its actions." *Esmilla v. The Cosmopolitan Club*, 936 F. Supp. 2d 229, 238-39 (S.D.N.Y. 2013).  "The plaintiff must then persuade the finder of fact that the proffered explanation is pretextual." *Id.* at 239.  TWEAN posits that it terminated Sydney for violating its "zero tolerance cash handling policy (*i.e.* failing to turn in payments from two customers)" and terminated Capousis for "collecting, disclosing, and retaining confidential customer information".  Def. Mem., p. 24. Sydney's termination was pretextual because he had previously violated the same policy without discipline or termination, which was known to TWEAN management.  Pl. SMF, ¶¶137-38.  Capousis's termination was pretextual because his practice of recording customer information in a notebook was followed by other TSRs without discipline or termination.  Pl. SMF, ¶¶ 147-49.  The inconsistent application of company policies towards Plaintiffs raises a genuine issue of material fact concerning pretext that is best left for the jury to decide at trial. *See Esmilla*, 936 F. Supp. 2d at 249 ("The apparent inconsistencies between Defendant's formal disciplinary policies and how Plaintiff was

treated, together with the temporal proximity of Plaintiff's purported complaints and her termination, are enough to create a triable issue of fact as to whether Defendant's stated reason for terminating Plaintiff's employment was pretextual.").

### E.   A Genuine Issue of Material Fact Exists as to Whether Plaintiffs Were Paid All Commissions Owed

TWEAN argues that it is entitled to summary judgment on Plaintiffs' claims under Labor Law 191(1)(c) because TWEAN asserts it has paid all commissions that Plaintiffs were due.  Def. Mem., p. 20-21.  Plaintiffs claim they are still owed commissions from their employment with TWEAN.  Pl. SMF, ¶¶ 125, 128, 133, 216-17. Therefore, a genuine issue of material fact exists and the Court should deny TWEAN's motion concerning this claim.

## IV.   CONCLUSION

The burden of proving that no genuine issue of material fact exists, including proving the elements of the exemptions relied upon by TWEAN when denying overtime to Plaintiffs, is undoubtedly placed upon the defendant.  Plaintiffs' primary duty was the installation of TWEAN products, not sales; and installation required physical labor as well as training on how to use certain equipment to install and for safety.  Plaintiffs did not regularly and customarily obtain work orders away from TWEAN's place of business.  TWEAN is a telephone company excluded from utilizing the Section 7(i) exemption and has failed to proffer any evidence demonstrating that its services are recognized as a retail service in its particular industry.  For these reasons that are more fully articulated above, TWEAN has failed to carry this burden and it is respectfully requested that the Court deny TWEAN's Motion for Summary Judgment concerning Plaintiffs' causes of action for unpaid overtime wages.

Likewise, genuine issues of material fact exists as to whether Plaintiffs were paid the full amount of the commissions earned and whether TWEAN retaliated against Plaintiffs for making complaints about unpaid commissions and non-payment of overtime.   Therefore, Plaintiffs respectfully requests that the Court deny TWEAN's Motion for Summary Judgment concerning Plaintiffs' causes of action under the Labor Law for unpaid commissions and retaliation.


Respectfully submitted,


Dated: April 22, 2015
       Syracuse, NY                            _____/s_____

                                         Lewis G. Spicer, Esq. (517858)
                                         Matthew J. Blit, Esq.
                                         Justin S. Clark, Esq.
                                         LEVINE & BLIT, PLLC
                                         499 South Warren Street, Suite 500B
                                         Syracuse, New York 13202
                                         gspicer@levineblit.com
                                         *Attorneys for Plaintiffs*