17-1219
Sydney v. Time Warner Entm't-Advance/Newhouse P'ship

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 4th day of October, two thousand eighteen.

PRESENT:  GERARD E. LYNCH,
          CHRISTOPHER F. DRONEY,
                *Circuit Judges*,
          WILLIAM K. SESSIONS III,
                *District Judge*.*

_____

JEFFREY SYDNEY AND STEPHEN CAPOUSIS, ON
BEHALF OF THEMSELVES AND OTHERS
SIMILARLY SITUATED,

           *Plaintiffs-Appellants*,

     v.                                                                          No. 17-1219

TIME WARNER ENTERTAINMENT-
ADVANCE/NEWHOUSE PARTNERSHIP,

           *Defendant-Appellee*,

TIME WARNER CABLE, INC.,
           *Defendant*.**

_____

* Judge William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

** The clerk of court is directed to amend the caption as set forth above.

CERTIFIED COPY ISSUED ON 10/04/2018

FOR PLAINTIFFS-APPELLANTS:    M<small>ATTHEW</small> J. B<small>LIT</small>, Levine & Blit, PLLC, New York, NY.

FOR DEFENDANT-APPELLEE:    M<small>ICHAEL</small> K<small>ABAT</small> (J. Scott Carr, *on the brief*), Kabat Chapman & Ozmer LLP, Atlanta, GA.

Appeal from a March 28, 2017, judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED**, and the case is **REMANDED** for proceedings consistent with this order.

Plaintiffs-Appellants Jeffrey Sydney and Stephen Capousis appeal from an order of the United States District Court for the Northern District of New York (Scullin, *J.*) entered March 28, 2017, granting summary judgment in favor of Defendant-Appellee Time Warner Entertainment-Advance/Newhouse Partnership ("TWEAN") on all of plaintiffs' claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Sydney and Capousis were formerly employed by TWEAN as Territory Sales Representatives ("TSRs"). TWEAN—now dissolved—was a subsidiary of Time Warner Cable, Inc. TWEAN provided cable television, internet, and telephone services in the Syracuse, New York area. On appeal, Plaintiffs challenge only the grant of summary judgment with respect to their claims for unpaid overtime arising under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").[1] Specifically, Plaintiffs argue that the district court erred in concluding on summary judgment that they were exempt from the FLSA and NYLL's overtime provisions because they were "outside salesm[e]n." *See* 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.2. We agree.

We review *de novo* the district court's grant of summary judgment. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] Accordingly, they have abandoned any challenges to the district court's grant of summary judgment with respect to their other claims. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

In ruling on a motion for summary judgment, the court "construes the evidence in the light most favorable to the non-moving party, and draw[s] all reasonable inferences in its favor." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one[] side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (first, second, and third alterations in original) (quoting *Anderson*, 477 U.S. at 252). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

Subject to certain exemptions, the FLSA and NYLL require employers to pay overtime to employees who work more than 40 hours per week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.2. Relevant here is the provision that "any employee employed . . . in the capacity of outside salesman" is exempt from FLSA and NYLL overtime rules.[2] *See* 29 U.S.C. 213(a)(1) (FLSA outside salesman exemption); 12 N.Y. C.R.R. § 142-2.2 (adopting most FLSA exemption categories, including outside salesman). An outside salesperson is defined as an employee

> (1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a)(1)–(2).[3]

The term "primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* To determine an employee's primary duty, courts consider the following non-exhaustive list of factors:

---

[2] In the district court, TWEAN argued that Sydney and Capousis were also exempt as employees of retail or service establishments. *See* 29 U.S.C. § 207(i); 12 N.Y. Comp. Codes R. & Regs. § 142-2.2. The district court did not address this argument, and TWEAN does not raise it as an alternate ground for affirmance on this appeal. We express no opinion as to the merits of this argument.

[3] "'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

3

> [1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*; *see also Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 145–46 (2d Cir. 2013) (applying 29 C.F.R. § 541.700 to analyze employee's claim for overtime wages).

The second factor—the amount of time spent performing exempt work—"can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). Generally, an employee who spends the majority of his or her time performing exempt work is exempted, although "time alone . . . is not the sole test." *Id.*

> When evaluating "primary duty" in the "outside sales" context, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

*Id.* § 541.500(b).

Whether an employee is exempt is "a mixed question of law and fact." *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010). "The question of how the [employees] spent their working time . . . is a question of fact." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). "The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . ." *Id.* Accordingly, in deciding whether to grant a defendant-employer's motion for summary judgment on the ground that the plaintiff-employee is exempt from the FLSA's overtime provision, the court must first construe the evidence regarding how the employee spent his or her time in the light most favorable to the employee (the non-moving party). The court must then determine, as a matter of law, whether—for purposes of deciding the motion for summary judgment—the exemption applies on those facts.

We conclude that the district court erred in holding on summary judgment that Plaintiffs' primary duties were exempt sales, as opposed to non-exempt installations, and accordingly in its ultimate conclusion that the outside sales exemption applied.[4]

---

[4] We emphasize that our conclusion is applicable only to TWEAN's motion for summary judgment. We express no view whether, after fact-finding by a jury regarding Plaintiffs' job duties, Plaintiffs may ultimately be determined to be exempt employees.

4

According to Sydney and Capousis, their duties as TSRs "were primarily the physical installation of cable, internet, and telephone equipment at Multiple Dwelling Units ('MDU[s]')," App. 847, 854. MDUs are typically apartment complexes. TSRs were assigned to, and were responsible for, *inter alia*, developing and maintaining positive relationships with the leasing agents and management at the MDUs to which they were assigned. At the first meeting with building management, TSRs explained to management what services TWEAN could provide to the tenants. TSRs provided their contact information to MDU managers, along with business cards and promotional materials, and asked the managers to have their tenants call them to place orders for TWEAN services. In order to maintain good relationships, the TSRs would meet with managers at their MDUs about once per week for a few minutes. TSRs also occasionally hosted events such as pizza parties for MDU tenants in order to ensure that tenants were having a positive experience with their TWEAN products, although such events were rare.

Tenants at MDUs could contact TSRs directly, via telephone, to order TWEAN services. During the calls, TSRs would attempt to have customers sign up for as many services and "bundles" of television programming and internet service as possible. If a customer agreed to purchase TWEAN services, the installation of the service could proceed in one of three ways: (1) the tenant would receive a self-installation kit; (2) the TSR would deliver the equipment and perform the installation; or (3) the TSR would have a technician perform the installation. If the installation involved complicated wiring issues or required climbing a poll or ladder to activate service, TSRs were unable to perform the installation, and would have to call a technician.

According to Sydney, he worked between 50 and 70 hours per week, working Monday through Saturday. On a typical day, he would go into TWEAN's office between 8:30 and 9:00 am, catch up on paperwork and check phone messages. At approximately 10:00 am, he would go to the warehouse, pick up the equipment he needed for the day's installations, and then go out to perform the installations. He typically performed five to ten installations per day, depending on the time of year. Installations could take from 30 minutes to several hours, and would usually take at least an hour. Additionally, Sydney would typically receive two to three calls per week from MDU managers asking for him to troubleshoot customer issues at individual apartments; troubleshooting those issues would typically take between 30 and 90 minutes.

Similarly, Capousis would arrive at TWEAN's office between 8:00 and 8:30 am. The first "few" hours of his day were spent attending sales meetings, responding to emails, and returning phone calls. Afterwards, he would go to the warehouse, pick up the equipment needed for that day's installations, and perform installations at his MDUs. Like Sydney, he performed five to ten installations per day (lasting 30 minutes to several hours), in addition to troubleshooting tenant problems. Capousis worked between 55 and 70 hours per week.

5

Accordingly, drawing all reasonable inferences in favor of Sydney and Capousis, a reasonable factfinder could conclude that they spent the majority of their time at work performing non-exempt work, i.e., installations. Although "[t]ime alone . . . is not the sole test" for resolving the "primary duty" inquiry, the amount of time that an employee spends performing exempt work "can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). "Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* The inverse must also be true: employees who spend most of their time performing non-exempt work generally do *not* satisfy the primary duty requirement.

Although it is generally the case that when an employee spends more time performing non-exempt work as opposed to sales, his "primary duty" is not sales, it is not always the case; accordingly, we must examine whether factors other than "time spent" warrant a finding that Plaintiffs are exempt salespersons. Turning to other factors enumerated in 29 C.F.R. § 541.700(a), the evidence, construed in Plaintiffs' favor, does not support a conclusion that Plaintiffs' sales duties were more important than their installation duties. Of course, growing their customer base and convincing existing customers to purchase additional services is undoubtedly paramount to TWEAN; however, their installation duties were also consequential. We do not find the direct supervision factor helpful, as one would expect both salespersons and installation technicians to be relatively free from direct supervision while out of the office. Finally, installation technicians performing similar work to TSRs' non-exempt work—i.e., installation work—were paid hourly wages and received overtime, which weighs in favor of Plaintiffs' position that they are non-exempt.

Our analysis does not end here, for the factors enumerated in 29 C.F.R. § 541.700(a) are illustrative, not exhaustive. Indeed, "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.*

Plaintiffs provided additional information (not considered by the district court) about the labor required to complete the installations which, when construed in Plaintiffs' favor, is more consistent with the work of an installer than that of a salesperson. Prior to beginning employment in the position, TSRs received a week of safety, equipment, and installation training. Oftentimes when performing installations, TSRs had to clear snow or go through crawl spaces or cubby holes in order to access the main cable box in the building. In older units, TSRs had to run coaxial wires through different rooms in an apartment unit, including up flights of stairs. Additionally, the equipment they were required to carry could be quite heavy. TSRs typically brought the following tools with them to perform installations: wrenches, wire cutters, wire, tuners, screwdrivers, pliers, claw hammers, tools to strip wires, cable toners, tools to crimp wires, utility knives,

6

flashlights, a terminator tool, and safety equipment. Moreover, during installations, they had to wear a hard hat and safety glasses, and use a voltage detector.

The district court also failed to consider evidence regarding TWEAN's "Direct Sales Representatives" ("DSRs"). DSRs were tasked with making door-to-door sales to potential TWEAN customers, as well as encouraging existing TWEAN customers to purchase additional services. Significantly, DSRs conducted door-to-door sales activity in MDUs assigned to TSRs. DSRs did not perform installations. By contrast, according to Plaintiffs, the TSRs did not directly solicit customers or make door-to-door sales. Drawing all inferences in favor of Plaintiffs, the presence of DSRs at the MDUs assigned to TSRs undercuts TWEAN's argument that TSRs' primary duty at MDUs was sales.

It is true that the majority of Plaintiffs' income came from commissions, which is an income structure more typical for a salesperson than someone primarily performing installations. However, a significant portion of their commission payments were actually payments for installations that they performed. For example, they received $5.00 for installing a customer's cable and $10.00 for installing a modem. There is a dispute regarding whether Plaintiffs would be credited with the sale for purposes of calculating their commission if they did not personally perform the installation. Plaintiffs' position that they would not be credited with a sale if they did not perform the installation is arguably supported by an August 2, 2011, email detailing an incident in which Capousis claimed to have made a sale, but was not credited with the sale. Instead, the employee who performed the installation received credit for the sale. Since this case is before us on TWEAN's motion for summary judgment, we must assume that the jury will resolve this factual dispute in Plaintiffs' favor.

In arguing that notwithstanding the above-referenced evidence, Plaintiffs' primary duty were sales, TWEAN, citing 29 C.F.R. § 541.500(b), argues that Plaintiffs' installation work was merely incidental to their sales work, and therefore also exempt work. However, drawing all reasonable inferences in favor of Plaintiffs and in light of the evidence described above, we cannot conclude, as a matter of law, that the installations conducted by the TSRs were merely incidental to their sales efforts.

In sum, construing the evidence in the light most favorable to Plaintiffs—as we must for purposes of summary judgment only—their primary duties were installations, not sales.

7

Accordingly, the judgment of the district court is **VACATED**, and the case is **REMANDED** for proceedings consistent with this order, as there are genuine disputes of material facts regarding Plaintiffs' job duties.[5]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[5] We need not address Plaintiffs' argument that their sales work was carried out over the telephone and that accordingly, they were not "customarily and regularly engaged away from the employer's place or places of business in performing such primary [sales] dut[ies]." 29 C.F.R. § 541.500(a)(2). We leave that for resolution in the district court.