UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY SYDNEY, STEPHEN CAPOUSIS,
*on behalf of themselves and others similarly situated*,

                              Plaintiffs,

v.                                         5:13-CV-286
                                         (FJS/TWD)

TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP,

                              Defendant.
_____

APPEARANCES                                  OF COUNSEL

LEVINE, BLIT LAW FIRM                LEWIS G. SPICER, ESQ.
 *Attorney for Plaintiffs*                   JUSTIN S. CLARK, ESQ.
499 South Warren Street, Suite 500B    MATTHEW J. BLIT, ESQ.
Syracuse, New York 13202
       -and-
350 Fifth Avenue
Suite 3601
New York, New York 10118

KABAT, CHAPMAN & OZMER LLP      J. SCOTT CARR, ESQ.
 *Attorney for Defendant*                  MICHAEL D. KABAT, ESQ.
171 17th Street, NW
Suite 1550
Atlanta, Georgia 30363

MACKENZIE HUGHES LLP              WILLIAM B. HUNT, ESQ.
 *Attorney for Defendant*
440 South Warren Street, Suite 400
Syracuse, New York 13202

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECCOMENDATION

      Pending before the Court is Stephen Capousis's ("Capousis") and Jeffrey Sydney's

("Sydney") (collectively "Plaintiffs") motion to certify a class pursuant to Rule 23 of the Federal

Rules of Civil Procedure ("FRCP 23") and to conditionally certify a collective action under the Fair Labor Standards Act ("FLSA").  (Dkt. No. 120.)  Time Warner Entertainment-Advance/Newhouse Partnership ("Defendant") opposes Plaintiffs' motion.  (Dkt. No. 122.)  This matter was referred to the undersigned to issue a Report-Recommendation as to whether class and collective action certification is warranted.  After reviewing the record in this case and the parties' submissions, this Court recommends that Plaintiffs' motion to certify a class and a collective action be denied.

**I.      RELEVANT BACKGROUND**

Plaintiffs are former Territory Sales Representatives ("TSR") who worked for Defendant. (Dkt. No. 120-1 at 6.)  According to Plaintiffs, all TSRs in the Northeast Region were subject to the same commission plan.  *Id*. at 7.  To that end, all TSRs were compensated with a base salary and were eligible to receive commissions if certain monthly targets were met.  *Id*.  TSRs were not paid overtime wages.  *Id*.  Plaintiffs assert TSRs were expected to work a minimum of forty hours per week.  *Id*. at 8.

Plaintiffs contend the duties of a TSR were to: "take work orders from potential customers of [Defendant] who called in; perform the installation; troubleshoot technical or mechanical issues for existing customers; and maintain a positive relationship with leasing agents and management of the apartment complexes they were assigned."  *Id*. at 8.  The TSR job was more labor intensive than the job of a Direct Sales Representative ("DSR") who made traditional door-to-door sales.  *Id*.  To that end, TSRs were required to be trained on how to use various tools and technical equipment.  *Id*.  According to Plaintiffs, most of the sales TSRs obtained came from potential customers contacting TSRs to place an order.  *Id*.

Plaintiffs submit that the TSR's most important duty was to install Defendant's products.

*Id*. at 9.  Specifically, Defendant did not have an enforceable contractual agreement with a customer until the installation occurred.  *Id*.  Thus, the ability to install Defendant's products safely and effectively was important to becoming and remaining a TSR.  *Id*. A job description for the TSR position in Binghamton identifies installation as an "essential job function" for the TSR position.  *Id*.  TSRs received a week of safety, equipment, and installation training after they were hired.  *Id*.  If an employee could not learn how to safely and properly install Defendant's products, that employee could not be a TSR.  *Id*. at 10.  Plaintiffs assert that the installation of Defendant's products usually took between 30 minutes and one hour to complete but could take longer if technical difficulties emerged.  *Id*.

Defendant, of course, strenuously disagrees with the material allegations as described above.  That is, Defendant argues "[t]he most important duty of TSRs and the duty requiring most of their time is sales."  (Dkt. No. 122 at 11.)  Specifically, Defendant presented declarations from five separate TSRs who stated that "they spent the vast majority of their time on activities calculated to generate sales, were not required to perform installations, only installed services they had sold, and only performed installations because it helped them make sales."  *Id*. at 9.[1]

## II.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### A.    Plaintiffs' Proposed Class

Plaintiffs state the "putative class" includes fifty-four individuals who worked as TSRs for Defendant from March 13, 2007, to present in Syracuse, Albany, Binghamton, Rochester, Buffalo, and Middletown.  (Dkt. No. 120-1 at 7.)

---

[1] Plaintiffs contend the Court should either disregard these declarations or permit Plaintiffs to depose these employees.  (Dkt. No. 123 at 7.)  The Court disagrees.  Plaintiffs fail to cite any support for their arguments and the evidence Defendants submit is axiomatically relevant to the issues the Court must consider.

3

B.     **Legal Standard for Class Certification**

FRCP 23 sets forth the requirements for certifying a class.  The party seeking certification must satisfy the four prerequisites of FRCP 23(a) and show that at least one of the three criteria in FRCP 23(b) is met.  *Marisol v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997). The moving party must demonstrate compliance with these rules by a preponderance of the evidence.  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

The prerequisites of FRCP 23(a) are numerosity, commonality, typicality, and adequacy of representation.  *Id*. at 201-02.  Thus, the party seeking certification must show "(1) 'the class is so numerous that joinder of all members is impracticable'; (2) 'there are questions of law and fact common to the class'; (3) 'the claims or defenses of the representative parties are typical' of those of the class; and (4) 'the representative parties will fairly and adequately protect the interests of the class.'"  *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(a)).  In determining whether the moving party has established the prerequisites of FRCP 23(a), the Court conducts a rigorous analysis of the record; such analysis will frequently "entail 'overlap with the merits of the plaintiff's underlying claims.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  However, FRCP 23 does not grant the Court license to engage in "free-ranging merits inquiries"; merits questions are to be considered only "to the extent they are relevant" to the FRCP 23(a) inquiry.  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

Upon a finding the proposed class meets FRCP 23(a), the Court then determines whether certification is appropriate under FRCP 23(b).  *Roach*, 778 F.3d at 405.  Here, Plaintiffs seek

certification under FRCP 23(b)(3), which provides certification is proper "if both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b).

### C. Exemptions Applicable to the Proposed Class

As noted above, this action involves Plaintiffs' allegation Defendant denied paying them overtime wages despite their eligibility and that they typically worked more than forty hours a week. Subject to certain exemptions, the FLSA and New York Labor Law require employers to pay overtime to employees who work more than 40 hours per week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y. C.R.R. § 142-2.2. The overtime compensation requirement, however, does not apply with respect to all employees. Plaintiffs contend their motion for class certification is premised on the common legal questions of whether Defendant mis-classified TSRs as an outside salesperson or as an employee of a retail or service establishment. *See* 29 U.S.C. § 213(a)(1) (FLSA outside salesman exemption); 29 U.S.C. § 207(i) (FLSA retail or service establishment exemption) N.Y. C.R.R. § 142-2.2 (adopting most FLSA exemption categories, including outside salesman and retail or service establishment).[2]

---

[2] The determination of whether an employee falls within an exemption under the FLSA "is a mixed question of law and fact." *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010). "'The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law.'" *Id.* (quoting *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986))). "An employer seeking to rely upon an exemption as a defense to paying overtime bears the burden of proving that such exemption applies." *Id.* (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009)) (other citations omitted).

### 1. *Outside Salesperson Exemption*

An outside salesperson is defined as an employee:

> (1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a)(1)-(2).

The term "primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id*. To determine an employee's primary duty, courts consider the following non-exhaustive list of factors:

> [1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id*.; *see also Gold v. N.Y. Life Ins. Co*., 730 F.3d 137, 145-46 (2d Cir. 2013) (applying 29 C.F.R. § 541.700 to analyze employee's claim for overtime wages). The second factor—the amount of time spent performing exempt work—"can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). Generally, an employee who spends the majority of his or her time performing exempt work is exempted, although "time alone . . . is not the sole test." *Id*. When evaluating "primary duty" in the "outside sales" context, work performed incidental to and in conjunction with the employee's own outside sales

or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts is also regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries, and attending sales conferences. *Id*. § 541.500(b).

With respect to whether an employee is "customarily and regularly engaged away from the employer's place or places of business," the relevant regulation provides as follows:

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

29 C.F.R. § 541.502.

### 2. *Retail or Service Establishment Exemption*

The "retail or service establishment" exemption, as written in the FLSA, provides, in relevant part, as follows:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein,

>       if (1) the regular rate of pay of such employee is in excess of one
>       and one-half the minimum hourly rate applicable to him under
>       section 206 of this title, and (2) more than half his compensation
>       for a representative period (not less than one month) represents
>       commissions on goods and services. . . .

29 U.S.C. §207(i).

"Courts have continued to apply the definition contained in the repealed '§ 213(a)(2)' of the FLSA in determining whether an employer is a retail or service establishment." *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 434 (N.D.N.Y. 2014) (citations omitted). "Under the repealed section, a retail or service establishment was defined as an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." *Id*. (citations and internal quotations omitted).

### D. FRCP 23(a) ANALYSIS

#### 1. *Numerosity*

Numerosity requires that the proposed class have so many members to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). Courts in the Second Circuit presume numerosity when the proposed class is at least 40 members. *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013) *aff'd sub nom. Gortat v. Capala Bros., Inc.*, 568 F. App'x 78 (2d Cir. 2014). Here, Plaintiffs have produced evidence that there are over 50 members in the putative class. Therefore, the Court finds the proposed class is sufficiently large to satisfy the numerosity requirement of FRCP 23(a)(1).

#### 2. *Commonality*

To satisfy FRCP 23(a)'s commonality requirement, Plaintiffs must show that the class members have "suffered the same injury" and that their claims "depend upon a common

contention . . . of such a nature that it is capable of classwide resolution." *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 350). "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quotation and citation omitted) (emphasis omitted). Thus, the commonality question before the Court at the class certification stage is "whether the record evidence demonstrates a likelihood that common answers will be determined via a class action approach, or conversely, whether differences among [the proposed class members] will necessarily generate individualized, rather than common, determinations as [the] litigation moves forward." *Jacob v. Duane Reade*, 289 F.R.D. 408, 415 (S.D.N.Y. 2013), *on reconsideration in part*, 293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (summary order).

As discussed above, the critical consideration in this case is whether TSRs were mis-classified or—as Defendant contends—TSRs were exempted from overtime requirements because they were outside salespersons or worked at a retail or sales establishment. With respect to the outside salesperson exception, Plaintiff contends the question of whether TSRs were "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty," 29 C.F.R. § 541.500(a)(1)-(2), can be determined on a classwide basis. Plaintiffs must show that there is a common answer to the question of whether the putative TSR class members were *mis*-classified because they "were customarily and regularly engaged away from the employer's place or places of business" when performing their duties. Plaintiffs cannot meet that burden.

Plaintiffs argue commonality is shown because Williams Edwards, Plaintiffs' former supervisor, testified at his deposition that "ninety percent of a TSR's sales came from a potential

9

customer calling the TSR by telephone." (Dkt. No. 123 at 9-10.) However, the text of 29 C.F.R. § 541.502 belies their argument. For one, 29 C.F.R. § 541.502 notes that "[o]utside sales does not include sales made by . . . telephone . . . unless such contact is used merely as an *adjunct to personal calls*." 29 C.F.R. § 541.502 (emphasis supplied). Here, Plaintiff offers no evidence about how those sales calls originate, i.e., are the customers calling the TSR because of an event he or she conducted at an apartment complex or are they calling a generic sales number? Moreover, 29 C.F.R. § 541.502 specifically assumes the telephone calls are being answered at a "fixed site," like a home office. *Id*. ("[A]ny fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."). Again, Plaintiffs provides no evidence regarding where the TSR fielded these calls and whether they did so at a fixed site or on their cell phone when they were doing other work. *See Anderson v. NVR, Inc.*, 300 F.R.D. 116, 119 (W.D.N.Y. 2014) ("Determining whether each plaintiff was 'customarily and regularly' engaged away from the employer's place of business in performing outside sales activities will require an individualized and fact-intensive analysis of each and every plaintiff's work experience, including their daily routines and habits, and preferred methods of procuring sales."); *see also Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 99 (E.D.N.Y. 2015).

      The Court finds Plaintiffs have failed to meet their burden to show that Defendant's alleged improper classification of TSRs may be proved on a common basis with regard to the outside salesperson exemption.

      However, the Court finds common proof can answer the question of whether Defendant qualifies for the retail or service establishment exemption. As noted above, a "retail or service"

establishment is defined as an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." *Johnson*, 4 F. Supp. 3d at 434 (citation and internal quotation omitted). With respect to this inquiry, the *primary* consideration would address proof that is specific to Defendant as a *company* and not to each individual TSR. Specifically, general proof can answer the question of whether Defendant, as a business, made 75% of its sales to an end-user, i.e., its good or services were not for resale. Similarly, general proof can answer whether Defendant's business is recognized as retail.[3]

Accordingly, the Court finds there is at least one common question of law that could be resolved on a classwide basis.

### 3.     *Typicality*

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). *Wal-Mart* recognized that in some contexts commonality and typicality may merge because "both serve as guideposts determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

---

[3] It does not matter in this context that an individual inquiry would be required to consider each class member's wage and the percentage of compensation they received as commissions. It is axiomatic that "[t]he commonality requirement may be met when individual circumstances of class members differ," as long as class members' "injuries derive from a unitary course of conduct." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) (citations omitted) (finding commonality despite there being differences in calculations of the class members' wages).

the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5.  A named plaintiff's claims need not be identical to those of the proposed class members; so long as the named plaintiff's claims share the same essential characteristics as that of the proposed class, typicality will be satisfied, even where there are "minor variations in the fact patterns underlying individual claims." *Glatt v. Fox Searchlight Pictures*, 293 F.R.D. 516, 537 (S.D.N.Y.2013) (citing *Robidoux,* 987 F.2d at 936).

Here, the Court finds its discussion regarding commonality is equally relevant to the typicality requirement.  That is, each of the proposed class members' claim would have similar characteristics at least with respect to whether Defendant was a retail or service establishment.

### 4. Adequacy

"Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Jackson*, 298 F.R.D. at 164.  Courts consider whether the class representative is prepared to fully litigate the action and has any known conflicts with other class members.  *Shayler v. Midtown Investigations, Ltd*., No. 12-CV-4685, 2013 WL 772818, at *5 (S.D.N.Y. Feb. 27, 2015).

Defendant does not object to the qualifications of Plaintiffs' counsel.  Based on the Plaintiffs' submission on class counsel's experience the Court finds Levine & Blit, PLLC are qualified to act as class counsel.

Defendant does, however, argue the named Plaintiffs are inadequate representatives because they do not appear to be taking an active role in this litigation.  However, many courts in this Circuit have found a class representative is adequate based only on the class representative's "basic familiarity with [the] action." *Annunziato v. Collecto, Inc*., 293 F.R.D. 329, 339 (E.D.N.Y. 2013); *see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 293

F.R.D. 287, 302 (E.D.N.Y. 2013) ("'attacks on the adequacy of a class representative based on the representative's ignorance' are generally disfavored." (quoting *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 42 (2d Cir. 2009))). To be sure, Defendant has pointed to some evidence that tends to show Plaintiffs do not have a great understanding of the case. However, Plaintiffs have been deposed twice in this action and they do not have any obvious conflicts with the other members of the proposed class. (Dkt. No. 123 at 14-15.) Thus, the Court is satisfied the named Plaintiffs have participated in this case enough to adequately represent the class.

### E.     FRCP 23(b) Predominance

Plaintiffs seek certification under FRCP 23(b)(3), which requires the Court to find questions of law or fact common to the class predominate over questions affecting individual members and that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). By its plain terms, FRCP 23(b)(3) "imposes a 'far more demanding' inquiry into the common issues which serve as the basis for class certification." *Sykes*, 780 F.3d at 81 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach*, 778 F.3d at 405 (citations omitted). Thus, while FRCP 23(b)(3) "contemplates that individual questions [of proof] will be present[,]" such questions may not "predominate over the common questions affecting the class as a whole." *Sykes*, 780 F.3d at 81 (citing *Messner v. Northshore Uni. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)).

Here, the Court finds individual inquiries would dominate the lone common question

identified above. For one, as noted above, the outside salesperson exemption inquiry will require an examination of the duties that each TSR performs and Plaintiffs have failed to introduce sufficient evidence to establish that the jobs were similar in ways material to the establishment of the exemption criteria. *See Myers*, 624 F.3d at 549 (affirming that predominance requirement was not satisfied were the plaintiffs failed to proffer evidence that their specific job duties were generalizable to other employees at other locations); *but see Damassia*, 250 F.R.D. at 156-61 (certifying Rule 23 class action of overtime claims under New York Labor Law and concluding that plaintiffs satisfied the predominance requirement by, *inter alia*, demonstrating that the job duties of putative class members were "largely consistent" across the class and that individual differences in job tasks would not be of the "magnitude" to "cause individual issues to predominate").

With respect to the outside salesperson exemption, Plaintiffs point to one excerpt from the deposition of Williams Edwards, the Direct Sales Manager for Central New York, that 90% of a TSR's sales came from a potential customer calling the TSR by telephone to establish TSRs were not "customarily and regularly engaged away from the employer's place or places of business." (Dkt. No. 123 at 9-10 (citing Dkt. No. 120-6 at 13-14).) However, as discussed above, this evidence is not dispositive because it does not answer whether the TSR was on his or her mobile phone or where he or she fielded such calls. To determine whether TSRs were improperly classified, the Court must consider the nature of the telephone calls, where the calls originated from, and the general working conditions of TSRs. The evidence adduced by both parties demonstrates there was substantial variation with respect to a TSR's sales work, such that determining a putative class member's eligibility for inclusion in the class would be based on a myriad of individualized determinations about the TSRs sales activity and where they conducted

14

that activity.

Thus, consideration of the entire "outside salesperson" exemption in this case will require detailed, individual inquiries into whether each TSR was "customarily and regularly engaged away from the employer's place or places of business" and what their "primary dut[ies]" were. Here, the Court finds the many factual questions regarding this exemption will predominate the litigation. Therefore, despite—as found above—whether Defendant is a retail or service establishment can likely be determined on a classwide basis, the inquiry into whether the outside salesperson exemption applies does not lend itself to class action. Rather, the Court would find itself conducting more than 50 mini-trials regarding each TSR's activities and where they made their sales. Given these inevitabilities, a class action is not a superior method to litigate these claims.

In sum, the Court finds that the evidence put forward by the Plaintiffs is insufficient to carry their burden to establish by a preponderance that common questions would predominate over individual ones. Accordingly, the Court recommends denying Plaintiffs' motion for class certification.

### III. PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION

Employees who have not been paid overtime compensation as required by the FLSA may bring a civil action against their employer to recover wages due on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). A proceeding brought under Section 216 is traditionally referred to as a "collective action." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). Although the FLSA itself does not prescribe the process for collective action approval, "district courts have discretion, in appropriate cases, to implement 29

U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Orders authorizing notice to potential collective action members are often referred to as orders conditionally "certifying" a collective action, even though the FLSA itself does not mandate certification. *See, e.g.*, *Myers*, 624 F.3d at 555 n.10; *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 474-75 (S.D.N.Y. 2010).

The dissemination of notice in an FLSA collective action is a "case management tool" that courts may employ in "appropriate cases," where notice will facilitate swift and economic justice. *See Myers*, 624 F.3d at 555 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169).

The FLSA does not define the term "similarly situated." Courts generally require "that there be a factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (internal citation omitted). At the conditional certification stage, "[t]he relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA." *Id*. In most cases, the plaintiffs can meet this burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Guillen*, 750 F. Supp. 2d at 475 (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

At the outset, the parties dispute the appropriate standard to consider Plaintiffs' motion. Specifically, Defendant advocates for a "modest-plus" standard for the certification question because discovery has already been conducted in this case. (Dkt. No. 122 at 26-27 (citing *Brown v. Barnes & Noble, Inc.*, No. 116-CV-07333, 2018 WL 3105068, at *6-7 (S.D.N.Y. June 25, 2018).) In applying the "modest plus" standard,

16

> the Court will look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding that the body of evidence is necessarily incomplete . . . . That is, the Court still will not decide the ultimate merits of the case or issues better suited for a decertification motion . . . . But, the additional evidence obtained in discovery should show that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs—in other words, that Plaintiffs have, through discovery, advanced the ball down the field.

*Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2015).

Here, the Court agrees with Defendant that it is reasonable to apply this heightened standard so the Court may consider the declarations Defendant submitted in response to Plaintiffs' motion for conditional certification. To that end, it makes sense to consider all the evidence in this case to determine whether potential opt-in claimants are in fact similarly situated to Plaintiffs because discovery has already been conducted. The Court concludes these affidavits are critical pieces of information in this case and provide an adequate basis to rule on Plaintiffs' motion. Thus, the Court will apply the so-called modest plus standard.

Here, applying this standard, the Court finds Plaintiffs have failed to meet their burden to show that other TSRs were similarly situated to them. In their reply brief, Plaintiffs state "TSRs were victims of a common policy where they were misclassified as employees exempt from overtime in violation of the FLSA; and they were subject to a common policy requiring TSRs to work more than forty hours in a week and work six days a week." (Dkt. No. 123 at 16.) Plaintiffs point to Defendant's "Form 10-K" filing that notes Defendant's competition is other telephone companies (Dkt. No. 120-3 at 23); a transcript answer that confirms TSRs did not receive overtime, (Dkt. No. 120-6 at 10); a transcript answer that notes TSRs received 90% of their sales from phone calls and would often perform their own installations, *id*. at 13-14; and

17

copies of Defendant's policy regarding the TSRs commission plan. (Dkt. No. 120-7 at 3; Dkt. No. 120-8 at 3.) Though some of this evidence might tend to help determine whether Defendant is a retail or service establishment, it does very little to address whether all putative class members' primary duty was sales, how they conducted their daily work, and how much time they worked each week.

On the other hand, Defendant has presented evidence, in the form of declarations of putative class members, that their experience as TSRs varied greatly from Plaintiffs. To that end, these declarations assert that they: (1) spent at least half the day but often as much as 80% of their workday outside the office on "sales" activities, (Dkt. No. 122-8 at 6, 10, 16-17, 23, 28); (2) met with apartment managers to develop referral sources on a regular basis, *id.* at 4, 10, 16-17, 22, 28; (3) knocked on doors to make sales pitches at least a few days a week, *id.* at 4, 10, 16-17, 22, 28; (4) held events at apartment complexes to make sales; (5) worked without supervision, *id.* at 5-6, 11, 17-18, 23, 29; (6) earned most of their pay from commissions, *id.* at 6, 12, 18, 23, 29-30; (7) earned commissions on sales regardless of whether they performed the installation, *id.* at 6, 12, 19, 24, 30; and (8) assert that Defendant's focus was on sales and they were ranked and reviewed according to their sales, *id.* at 7, 12-13, 19, 24-25, 31.

Thus, considering the record, it appears the TSRs "experiences appear to vary greatly . . . in ways that are highly relevant" to the determination of whether they were appropriately classified. *See Fraticelli v. MSG Holdings*, L.P., 13-cv-6518 (JMF), 2014 WL 1807105, at *2 (S.D.N.Y. May 7, 2014); *Warman*, 193 F. Supp. 3d at 324. "Where a plaintiff fails to [show that she and the other putative collective action members were victims of a common policy or plan that violated the law] or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving

that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice." *Armendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008). Accordingly, the Court recommends denying Plaintiffs' motion to conditionally certify the collective action.

## IV.  CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein it is hereby

**RECOMMENDED** that Plaintiffs' motion for class certification (Dkt. No. 120) is **DENIED**; and it is further

**RECOMMENDED** that Plaintiffs' motion for a conditional collective action (Dkt. No. 120) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

Dated: March 30, 2021
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge